No. 9059.

GEORGE M. BAYLY, EXECUTOR, VS. M. A. BECNEL ET AL.

In a settlement of accounts between planting partners. compound interest will not be allowed to either party unless it is shown by positive evidence that the party charged with interest had accepted the account as thus made or that he had directly or tacitly acquiesced in the charge of annual interest to be considered as capital in each ensuing account. Interest cannot be allowed on a claim never presented to the debtor before suit, which is allowed on a *quantum meruit*, and the validity of which results from the judgment.

The managing partner of an ordinary partnership is entitled to be reimbursed his actual expenses necessarily incurred in the interest of the partnership.

APPEAL from the Twenty-sixth District Court, Parish of St. John the Baptist. *Hahn*, J.

*Kennard, Howe & Prentiss* for Plaintiff and Appellee.

*O. O. Provosty* for Defendants and Appellants.

The opinion of the Court was delivered by

POCHÉ, J. This case has already been before us, and it was remanded for a second trial on issues left doubtful by the evidence.

As the points in controversy are numerous and complicated, the following statement of the principal issues and of the salient facts in the cause will facilitate a proper understanding of the final conclusions on which we propose to rest our decision.

In 1870, the plantation which is the primeval cause of this controversy, was owned in indivision and in equal shares by the defendant, M. A. Becnel, and by the succession of his brother, L. P. Becnel, and was burdened with a heavy mortgage created for the purpose of securing the payment of a series of promissory notes aggregating the sum of $120,000 in capital.

While the plantation was under seizure at the instance of the Louisiana State Bank, as holder of one of the notes secured as above stated, R. H. Bayly bought the bank's claims and was subrogated as plaintiff in the suit.

The seizure having been enjoined by M. A. Becnel, one of the defendants, Bayly entered into a compromise with the latter with a view to their joint purchase of the plantation. The main feature of the compromise was a stipulation under which M. A. Becnel was to be released of his share of indebtedness on the note held by Bayly, on reimbursing the latter one-half of his outlay for the purchase of the note, which was fixed at $9981 85. By a cash payment, that amount was reduced to $7879 58, to secure which Becnel's share, after the projected purchase, was to remain mortgaged until final payment.

It was further stipulated that each of the contracting parties was to endeavor to purchase on the best terms obtainable, the other outstanding mortgage claims affecting the plantation; and that the claims thus purchased were to be paid for on their joint account and were to be owned by them in equal shares. Under the provisions of a subsequent agreement, January 3, 1871, the plantation was then to be cultivated on their joint and equal account for a term of four years, the financial

administration being entrusted to Bayly, and the management of the cultivation placed under the control of Becnel.

Some time after the sale, Becnel bought one of the notes above referred to and held by Gardère, for the sum of $10,000; and within a short time thereafter, all the outstanding notes were acquired by the new owners of the plantation. Some were bought by Becnel, others by Bayly, and the purchase price of the same figures in the respective accounts of the partners as credits for their respective shares in the cost of the plantation.

After the compromise, the property was seized anew, and was adjudicated to Bayly in his individual name, but for the joint account of Becnel and himself, as shown by a written acknowledgment to that effect, executed by Bayly and subsequently put of record.

The purchase was made in April, 1871, at which time the projected planting partnership began, and continued until the 15th of February, 1872, when Robert H. Bayly died. From that time the plantation has been cultivated by Becnel on joint account with the Bayly succession, represented by G. M. Bayly, testamentary executor, under the exclusive management of Becnel, and under conditions made and renewed annually.

In June, 1878, this suit was instituted by the executor for the double object of effecting a partition of the property by means of a public sale and of completing a settlement of accounts between Becnel and the succession, including both the purchase and the planting accounts, down to the 1st of January, 1878. His moneyed demand was for an alleged balance of $28,347 50 against Becnel.

The first petition was met by several exceptions, the principal of which went to the erroneous cumulation of the two causes of action; and to the want of proper parties, on the ground that Becnel's share of the plantation had in the meantime been acquired by his wife, in reimbursement of her dotal rights.

By a supplemental petition, Mrs. Becnel was made a party, and prayer was made on proper allegations for a judicial declaration of the nullity of her purchase. In his answer, Becnel joined issue on plaintiff's accounts, objecting to many items, including charges of interest, etc., and urged numerous claims in reconvention; to which pleas and defenses reference will be made hereafter.

The first trial below resulted in a judgment which recognized the validity of Mrs. Becnel's purchase, and allowed plaintiff the full amount of his moneyed demand against Becnel, subject to the sum of $9000

allowed to the latter on his reconventional demand; and it was finally ordered that the partition sued for be effected by means of a public sale for cash.

On appeal to this Court the judgment of the lower court was reversed in several particulars and affirmed in others. It was then remanded on several issues hereinafter enumerated:

1. The judgment was reversed on the point of the validity of Mrs. Becnel's purchase, which was annulled and set aside as to the purposes of plaintiff in this suit.

2. It was further reversed on the refusal of Becnel's claim for interest, commission and other charges on his purchase of the Gardère and Bank of New Orleans claims, to the same extent as the same had been claimed and allowed on the Bayly purchase of the Louisiana State Bank and the Louisiana Bank claims.

3. It was also reversed in its refusal to allow credit to Becnel for his share in the sum of $1379 50, claimed by him for boarding, at his expense, several skilled mechanics when employed from time to time on the plantation.

4. It was further reversed in its final adjustment of the accounts between the parties, for the purpose of recasting the account on the points corrected by this Court, and if need be, on the points recommended to the court à quá for a second examination.

The judgment was affirmed in the following particulars:

1. In allowing to Becnel the sum of $9000 on his reconventional demand. That amount is made of a sum of $1500, which Becnel claimed as the value of his services annually as the exclusive manager of the plantation, both in the cultivation and in the financial department, since the death of Bayly. In the agreement, under date of January 3, 1871, above referred to, Becnel had consented to make no charge for his services as manager of the plantation. But under the evidence it appeared that after the death of his partner, the latter's duties, consisting in the purchase of necessary supplies, in securing the advances of necessary funds and in other acts of administration, had devolved upon and had been efficiently performed by Becnel, and that the sum of $3000 annually was a fair valuation of his double services; hence, this Court concurred with the district judge in allowing him a credit of $1500 for each of the years 1872, 1873, 1874, 1875, 1876 and 1877, and in reserving his right for a similar claim until the final partition.

2. The judgment was also affirmed in the dismissal of all the exceptions to the form of the action, and of all the dilatory exceptions inter-

posed by the defendant. Under our decree, the case was stripped of all points of contention raised by the pleadings, save the following points, which were remanded for further investigation:

1. The complaint of Becnel that he is charged with compound interest in Bayly's accounts.

2. The right of Becnel to claim interest on the sum of $1500 per annum allowed him for his services as sole manager since the death of Bayly.

3. The claim of Becnel to the sum of $5000, growing out of Bayly's letter to the sheriff on the day of sale, for work, seed-cane, cord-wood, etc., furnished by Becnel to the plantation in anticipation of a purchase by Bayly and himself.

4. The right of Becnel to be recognized as owner of one-half of the sum of $18,021 79, in the hands of Bayly & Pond (the factors of the plantation in 1872, and after Robert H. Bayly's death until 1875), at the time of their failure, placed to the credit of R. H. Bayly.

5. The claim of Becnel for the reimbursement of his traveling expenses to and from New Orleans in the interest of the plantation.

6. The right of Bayly to claim credit in his account with Becnel in the sum of $10,346 10, claimed as per compromise of Widow L. P. Becnel tutrix's account, in his statement of the costs of the plantation.

On the second trial below, new evidence, both documentary and parol, was introduced, bearing on all the points which had been remanded, as just stated. Fortunately, that evidence was important and it threw a great deal of new light on the case, and under it we will be able, as the district judge has been, to finally dispose of this complicated litigation. Under the effect of that evidence, the district judge, as he informs us in his able and elaborate opinion, saw the case in an entirely new light, and reached conclusions widely different from the views which he had entertained at the first trial.

Under his recent conclusions, the judge recast the entire account between the parties and decreed the defendant indebted to the Bayly succession in the much reduced sum of $958 62, and decreed the partition prayed for by public sale for cash.

Both parties have appealed—plaintiff with a view to an affirmance of the original judgment of the lower court, and defendant with a view to an increase of the amount allowed him on his reconventional demand and for a further reduction of plaintiff's claim.

We shall now review the finding of the lower court on the final adjustment of the accounts between the parties. We must premise the

statement that, in his judgment now under review, the judge found in favor of defendant on all points remanded below for further investigation, save and except the second and the sixth in our foregoing enumeration, and that we concur with him in all his conclusions.

1. Becnel's complaint that, under Bayly's accounts, he was charged with compound interest, is supported by the record.

The accounts, with interest charged on each item, were balanced annually—and the total balance was brought forward in the new account for the ensuing year. This is not and cannot be denied by plaintiff, but his contention is that the accounts as made have been accepted by the defendant, that under our jurisprudence the interest has been capitalized, and that the defendant is thus estopped from contesting the charges for interest as made in the account. His law is good, but he is not borne out by the facts.

A great deal of evidence has been taken on this point, and some of it is very conflicting. But the preponderance of the evidence is in favor of defendant's contention and satisfies us that Bayly's accounts as presented in this suit have never been accepted by the defendant, either tacitly or directly. Some of the most hotly contested items figure in the first accounts for the purchase price of the plantation, and the very serious resistance made to them discards all suspicion that they could ever have been accepted.

The acceptance of an account so as to bind the debtor to the interest therein charged as part of the capital in an ensuing account, must be proven clearly and positively, and must not be left to inference. C. C. 1939; Keane vs. Branden, 12 A. 20; Wright et al. vs. Hill et al., 13 A. 233.

In recasting the account, the judge correctly omitted detailed charges of interest made annually, and allowed interest on the respective claims of the parties from the dates of the disbursements to the date of the suit.

2. Becnel's claim for interest on the annual amounts allowed him for his services was properly refused.

That allowance is predicated on an equitable right of compensation for valuable services rendered, without a contract obligation. The claim is allowed on the proof of *quantum meruit;* it was not urged before the suit; hence, it has never been recognized or accepted by the debtor's representative.

The obligation to pay the amount allowed will result from this judgment; hence, the claim was not due or liquidated before judgment. Therefore, no interests are due and none should be allowed.

3. The claim of Becnel for $5000 on Bayly's promise grows out of the following circumstances, as shown by the record:

For several years previous to the seizure, the defendant had been cultivating the Becnel plantation for his exclusive and personal account, and he had placed thereon several items of considerable amount and valuable movable property, for which he had no claim against his co-owner. In the second agreement of January 3, 1871, it was agreed that all such property would be reserved from the seizure to be made by Bayly, that it should be appraised and credit given therefor to Becnel as part of his contribution to the purchase price. That item is the sum of $4601, which is undisputed in the defendant's account.

But in addition to that movable property placed on the plantation by the defendant, the record shows that after his compromise with Bayly, and pending the latter's seizure, the defendant, who had been placed in charge of the plantation, began active preparations to put the place in trim for a profitable cultivation in the year 1871, after the projected purchase by Bayly and himself. Those preparations consisted of the clearing of over one hundred acres of lands covered by underbrush, ploughing and ditching the same, and supplying the seed-cane necessary for planting the same, and of other items of property and labor which, in law as well as by nature, had become immovable and could not be removed as the other items of property reserved and appraised as above stated.

The late R. H. Bayly's attention was called to that labor and to the right of compensation therefor in Becnel, who, as keeper under the sheriff, could not be compelled to perform prospective labor. This right was recognized by Bayly, who further agreed that the labor and property thus furnished by Becnel were reasonably worth $5000, hence he agreed that Becnel would be credited with that amount in the future settlement of the purchase account.

On the day of the sale, Becnel called Bayly's attention to the possibility of another bidder or purchaser, and to the precarious condition of his claim for property which had become immovable. Whereupon, Bayly wrote to the sheriff that in case of a purchase by a third person, Becnel should be paid $5000 as a privileged claim out of the proceeds of the sale. The sheriff having since died, the letter could not be produced, but its existence and its contents in substance are shown conclusively by the testimony of Becnel and by that of three or four disinterested and reputable witnesses who had seen it and read it.

In addition to that testimony, there is full proof of the value of the labor and property for which this claim is pressed, and we are satisfied that the amount allowed for the same is reasonable and correct.

4. The right of Becnel to share in the amount of $18,021 79, which stood to the credit of the plantation on the books of Bayly & Pond at the date of their failure in 1875, is equally just and clear. On the first trial the theory of plaintiff was that that balance was due to R. H. Bayly personally. But on the second trial the *fac similes* of the firm's books were produced and they show conclusively that the balance stood to the credit of the plantation. Plaintiff shifted his position, and on the second trial his contention was that Becnel had been allowed credit for his share in his account current with R. H. Bayly.

In this he partially succeeded, and showed credits amounting to $2659 11, thus leaving a balance on that item in favor of the defendant in the sum of $6342 96.

5. On the claim of Becnel for reimbursement of his traveling expenses, the record now shows that he had disbursed some $1440, and hence he is entitled to credit for $720. In our previous opinion, we had recognized his very equitable right to that reimbursement, but we had failed to find sufficient *data* on which to base a judgment. They have been supplied on the second trial. The claim is therefore allowed.

6. The right of Bayly to claim credit in his purchase account, for the sum of $10,346, as the share due on the Louisiana State National Bank claim, by the tutrix of L. P. Becnel's minor child, results from the very nature of his contract with the defendant.

In the "Grima compromise," Bayly agreed to release M. A. Becnel on account of his indebtedness on that note, in consideration of being reimbursed by the latter, one-half of the cost of the claim. But he specially reserved his claim against the tutrix for the other half remaining due on the note. He did not cede or transfer any part of that claim to the defendant. Hence that note, for half of its amount, remained the exclusive and individual property of Bayly, and unlike the claims bought from Gardère, the Bank of New Orleans and the Bank of Louisiana, it never became the joint property of the two purchasing partners. Therein lies the fundamental error of the theory advocated by defendant's counsel, who wishes that this claim should be dealt with in all respects like the Gardère claim.

After the compromise, Bayly did not continue his seizure under the Louisiana State Bank claim, but he converted the proceedings into the *via ordinaria*, and after reciting the "Grima compromise," and reserv-

ing his mortgage rights thereunder against M. A. Becnel, he prayed for a personal judgment against the tutrix for her share of indebtedness, exceeding $20,000, and for recognition of his conventional mortgage on the minor's share of the plantation. Pending that litigation, Bayly entered into a compromise with the tutrix, under the effect of which he reduced his claim to $10,346, for which he obtained judgment in October, 1870.

The seizure and the sale of the plantation were made under the Gardière claim which had long since ripened into a judgment and which was transferred to Bayly under Becnel's instructions for the purpose of the sale. Now at the sale, after paying costs and privileged claims, Bayly retained in his hands the balance, some $17,000, to meet the claims secured by first mortgage. As the Gardère, the Bank of New Orleans, the Bank of Louisiana claims were in due course of time all acquired by Bayly and Becnel, they became the creditors of a fund which they owed, hence followed confusion. But that quality of debtor and creditor did not meet in Becnel as to the half of the Louisiana State Bank, to which a credit was due out of the funds retained by Bayly for himself and Becnel. Hence Becnel continued to owe one-half of that claim, which had been fixed at $10,346, as was shown above.

Under the effect of these transactions, all mortgages against the plantation were cancelled, with the exception of the claim held by Bayly as above stated, and to the concurrence of its amount, Bayly could have absorbed the whole amount retained by him out of the proceeds of the sale. But as he had voluntarily reduced it to $10,346, he could not claim more than that amount. Hence that sum was properly charged as a portion of the cost of the plantation.

The account as stated by the district judge, conforms with the conclusions which we have hereinbefore announced. On examination, we find it correct, but we deem unnecessary to reproduce it here in all its details. We note and approve of the reservation made in the judgment in favor of both parties to sue for any claims accruing after the first of January, 1878, or for all of such claims not covered by this decision.

Judgment affirmed, costs of appeal to be paid in equal shares by both parties.

## ON APPLICATION FOR REHEARING.

Plaintiff wishes this case reopened on the item which recognizes the claim of defendant to one-half of the sum of $18,021 78 to the credit of the Becnel plantation, in the hands of Bayly & Pond at the date of their failure.

In support of their position, they establish an account of the net receipts and of the cost of the crops made on the plantation from the year 1871 to 1876, both inclusive, which shows a loss as final results.

This may be true, but the accounts of Bayly & Pond began only in January, 1872, and those accounts running from year to year, do show an undisputed credit in favor of the planting partnership in the sum above stated.

Those accounts show that all the advances, both of money and of supplies, were made by Bayly & Pond, and all the crops were sold by them. The crops of several of these years resulted in loss, but the crop of 1874 was very productive and realized great profits, which turned the scales in favor of the planting partnership.

Nothing in the record shows that Robt. H. Bayly, who died in February, 1872, advanced a single dollar of the funds used in the cultivation of the plantation from January, 1872. It is, therefore, difficult to conceive by what process his succession could become the sole creditor of the fruits of the crops raised on borrowed money.

But the contention of plaintiff's counsel is that, Robt. H. Bayly made all the advances for the crop of the year 1871, which resulted in a clear loss of $12,162 17, by which operation Bayly became the creditor of Becnel in the sum of $6081 08, which is not accounted for.

In this lies the glaring fallacy of plaintiff's position.

By turning to the judgment of the lower court, as affirmed by us, we find in the column of Bayly's credit on the account as established by the district judge, the following item:

"January 19, 1872; *one-half net loss operating plantation*, 1871, $6081 08. Which is the date at which the accounts of Bayly & Pond begin."

Under plaintiff's theory that sum would figure twice as a credit in favor of Bayly.

We find no error in our judgment, and it must, therefore, remain undisturbed.

Rehearing refused.

---

MANNING, J. I do not think that Mr. Becnel has any interest in the item of $18,021 78, but that R. H. Bayly is alone entitled to the whole of it. Judgment was rendered against G. M. Bayly for that sum in

favour of R. H. Bayly's succession, and it was not pretended then by any one that any other than R. H. Bayly had any interest or share thereof. Suc. Bayly, 30 Ann. 75. This was the impression made upon me by my examination of the record on the first hearing, and it was expressed in the opinion then read, and renewed examination has confirmed me in the belief that it is correct. Becnel is allowed one-half of this sum or $9,010.89, and being improperly allowed, the judgment against him should be increased by that sum.